IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN ANDREW KISTER, AIS 264274, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:20-cv-827-ECM-CWB |
| OFFICER ELLIS, | ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   Introduction**

Plaintiff John Andrew Kister, proceeding *pro se,* filed this action under 42 U.S.C. § 1983 while incarcerated at the Bullock Correctional Facility ("BCF") in Union Springs, Alabama.[1] Kister has brought suit against Officer Julia Ellis on the allegation that she subjected him to retaliation in violation of his constitutional rights. (*See* Docs. 1 & 8). For relief, Kister requests $13,000.00 in damages. (Doc. 1).

On January 11, 2021, the court issued an Order (Doc. 10) directing Ellis to file a Special Report addressing Kister's claims, which Ellis did by submission dated April 23, 2021 (Doc. 21) and supplemented on June 14, 2021 (Doc. 29). In her Special Report, Ellis moved for summary judgment. (*See* Doc. 21 at p. 5). After reviewing Ellis's submissions, the court entered an Order on June 15, 2021 directing Kister to respond with affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 30). Kister subsequently complied. (Docs. 32, 34; *see also* Docs. 25 through 28).

---

[1] Kister is no longer incarcerated at BCF after having been transferred to other correctional facilities during the pendency of this action. (*See* Docs. 31, 35, 36, & 37).

1

The parties have been notified that the court "may at any time [after expiration of the time for Kister to file a response] and without further notice to the parties (1) treat the [Special] Report … and all supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response …, rule on the dispositive motion in accordance with the law." (Doc. 30 at p. 3). Pursuant to that disclosure, the undersigned Magistrate Judge will now construe Ellis's Special Report as presenting a motion for summary judgment and will recommend that summary judgment be granted in her favor.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record showing a genuine dispute of material fact. *Id*. at 324. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Summary judgment also should be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In determining whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Relevant Facts[2]

The following facts are derived from the verified Complaint (Doc. 1), the sworn or verified evidentiary materials presented by Ellis (Docs. 21-1 & 29-1), and the sworn or verified responses submitted by Kister (Docs. 27, 28, 28-2). Although Kister filed other responses (Docs. 25, 26, 32 & 34), such responses are neither sworn nor verified in accordance with the requirements of 28 U.S.C. § 1746—thereby precluding their consideration for purposes of summary judgment.[3]

---

[2] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[3] *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (*citing Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003), *as amended*, (Sept. 29, 2003) (noting that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment"); *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (holding that district court should not have considered unsworn and unverified allegation in deciding summary judgment); *see also Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 252 n.3 (11th Cir. 2005) (noting that "the complaint was unverified and therefore could not be considered evidence supporting [plaintiff's] claim" on summary judgment); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (explaining

On September 2, 2020, Kister left the residential treatment unit at BCF to place a mental health referral form in the institutional mailbox—requesting to see his mental health counselor. (Doc. 1 at p. 4; Doc. 27 at p. 1; Doc. 28-1 at p. 1). Ellis observed Kister in the hallway and asked him why he was not in his dorm. (*Id.*). After Kister explained his presence in the hallway, Ellis pushed him and told him that he had to go to Dorm H4 as "punishment." (*Id.*). And Ellis told Kister "I hope they do something to you" as she continued to push him. (Doc. 1 at p. 4; Doc. 28-1 at p. 1). Kister understood Ellis's use of the word "they" as a reference to the inmates in Dorm H4, which made him feel threatened. (Doc. 1 at p. 4). Kister maintains Ellis's statement of possible injury by inmates in Dorm H4 amounted to retaliation in response to his effort to obtain mental health care. (*Id.*; *see also* Doc. 8 at pp. 1-2; Doc. 27 at p. 1; Doc. 28-1 at p. 1). Ellis contends, *inter alia*, that she did not retaliate against Kister and that she is entitled to immunity in her official and individual capacities. (*See* Doc. 21).[4]

## IV. Discussion

### A. Sovereign Immunity

Ellis asserts that Kister's damages claim against her in her official capacity is barred by Eleventh Amendment immunity. (Doc. 21 at p. 2). Official capacity suits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his or her official capacity unless the state has

---

that unsworn statements, even by pro se parties, should not be "consider[ed] in determining the propriety of summary judgment").

[4] After screening Kister's Complaint under 28 U.S.C. § 1915(e)(2)(B), the Magistrate Judge found that Kister's allegations of verbal abuse and excessive force failed to state a claim and entered a Recommendation that the purported claims be dismissed. (*See* Doc. 7). Kister filed an objection stating that he did not intend to plead those claims—rather, he intended to plead only a retaliation claim against Ellis. (*See* Doc. 8 at pp. 1-2). The Magistrate Judge construed the objection as a motion to amend the Complaint and withdrew the Recommendation. (*See* Doc. 9). In light of that procedural history, discussion will be limited to Kister's purported retaliation claim.

waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).  With specific respect to the type of claim now being asserted by Kister, it has been recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  Accordingly, Ellis is entitled to sovereign immunity on all claims seeking monetary damages against her in her official capacity. *See Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]."); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277  (11th Cir. 1998) (holding that state officials in their official capacities are protected under the Eleventh Amendment from suits for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B. Qualified Immunity

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if the underlying conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citation and internal quotation marks omitted).

To receive qualified immunity, a defendant first must prove that he or she was acting within the scope of discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The record here is undisputed that Ellis indeed was acting within the course and scope of her discretionary authority. The burden therefore shifts to Kister to present evidence that Ellis is not entitled to qualified immunity. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To meet that burden, Kister must show two things: (1) that Ellis committed a constitutional violation and (2) that the constitutional right was "clearly established." *Id.*; *see also Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. ... In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and internal quotation marks omitted) (alteration in original). The court may analyze the elements "in whatever order is deemed most appropriate for the case," and a finding of qualified immunity is appropriate if sufficient evidence has not been presented as to any one of the elements. *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241-42).

i. **Retaliation**

Broadly construing Kister's allegations, he appears to claim that Ellis subjected him to a verbal threat of physical injury by other inmates in retaliation for having sought access to mental health treatment. (Doc. 1 at p. 4; Doc. 8 at pp. 1-2). A claim of retaliation for exercising a constitutional right is properly considered under the First Amendment. *See Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *see generally Pell v. Procunier,* 417 U.S. 817, 822 (1974) (explaining that prisoners retain those rights that are "not inconsistent with [their] status as

[prisoners] or with the legitimate penological objectives of the corrections system"). Conclusory allegations of retaliation, however, do not satisfy the standard required to establish retaliation. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009), *abrogated by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012) (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit .. .conclusory allegations as true"); *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (explaining that because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). Because virtually any adverse action can be characterized by the inmate as a retaliatory act, federal courts must "carefully scrutinize" retaliation claims brought against correctional staff, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and should "approach prisoner claims of retaliation with skepticism and particular care." *Davis v. Goord,* 320 F.3d3 46, 352 (2d Cir. 2003) (citation and internal quotation marks omitted). Stated differently, "prisoners' claims of retaliation … are [] easily fabricated [and] … pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001).

To succeed on a retaliation claim, a prisoner must establish that "(1) he engaged in constitutionally protected conduct; (2) the … retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (citation omitted); *Moton v. Cowart*, 631 F.3d 1337, 1341-42 (11th Cir. 2011); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). As for the causation prong, a court "asks whether the defendants were subjectively motivated" by the plaintiff's protected act. *Smith*, 532 F.3d at 1278. More than "'general attacks' on a defendant's motivations" must be made; rather, an inmate "must articulate 'affirmative evidence' of retaliation to prove the requisite motive." *Jackson v.*

*Assistant Warden,* 2018 WL 7858414, *2 (11th Cir. Dec. 6, 2018) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998)).

Here, even assuming *arguendo* that requesting mental health care may be considered a protected activity, Kister offers no more than his own conclusory statement that the conduct alleged against Ellis was retaliatory in nature. Certainly Kister has identified no "affirmative evidence" to show Ellis's "pertinent motive." *Crawford–El*, 523 U.S. at 600; *see also Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that plaintiff did not state a claim where he "produced nothing, beyond his own conclusory allegations, suggesting that" defendant's actions "were motivated by a retaliatory animus"); *Woods*, 60 F.3d at 1166 (explaining that "[t]o establish a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident … would not have occurred"); *see also Davis,* 320 F.3d at 353 (explaining that insulting, disrespectful, or sarcastic comments, without more, do not amount to adverse action). Kister's submissions simply are devoid of any facts to support a causal connection between his encounter with Ellis and his previous action in seeking access to mental health care.

Rather than demonstrating retaliation, Kister's allegations reflect nothing more than a personal, unsupported belief that he was subjected to retaliatory conduct. *See, e.g., Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation and internal quotations omitted) (holding that "[t]he relevant showing ... must be more than the prisoner's personal belief that he is the victim of retaliation"). Accordingly, Ellis is entitled to qualified immunity, and summary judgment otherwise is due to be granted in her favor. *See Celotex Corp.*, 477 U.S. at 322.

V.  **Conclusion**

For the reasons stated above, the undersigned Magistrate Judge hereby **RECOMMENDS** as follows:

1. that the Special Report (Doc. 21) submitted by Ellis be construed as a motion for summary judgment;

2. that the construed motion for summary judgment (Doc. 21) be granted; and

3. that this case be dismissed with prejudice.

It is **ORDERED** that any objections to this Recommendation must be filed by November 6, 2023. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this 23rd day of October 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**